UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CENTURION NETWORKING SERVICE PARTNERS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> DR. WADE N. BARKER, P.A. d/b/a BARKER BARIATRIC CENTER, and WADE BARKER, M.D., <br><br> Defendants. | Civil Action No. 17-cv-11304-ADB |

## **MEMORANDUM AND ORDER ON MOTION TO DISMISS**

BURROUGHS, D.J.

      This case arises out of missed payments due under a computer network servicing contract between the provider, Plaintiff Centurion Networking Service Partners, LLC ("Centurion"), and the client, Defendant Dr. Wade N. Barker, P.A. d/b/a Barker Bariatric Center ("Barker Bariatric"). Centurion asserts claims against Barker Bariatric for breach of contract, unjust enrichment, and violation of Massachusetts General Laws Chapter 93A, and seeks to pierce the corporate veil to hold individual Defendant Dr. Wade Barker, M.D. liable for Barker Bariatric's acts and omissions. [ECF No. 12] ("Amended Complaint"). Currently pending before the Court is Dr. Barker's motion to dismiss for lack of personal jurisdiction. [ECF No. 19]. For the reasons stated herein, the motion to dismiss is **GRANTED** and the Amended Complaint is **DISMISSED** without prejudice. Centurion is granted leave to file a second amended complaint within 30 days of the date of this Order.

I.      BACKGROUND

Because Dr. Barker moves to dismiss for lack of personal jurisdiction, the following factual summary draws from "the pleadings and whatever supplemental filings (such as affidavits) are contained in the record," giving credence to Centurion's version of the genuinely contested facts. Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016). On August 1, 2016, Centurion (a Delaware limited liability company with its principal office in Andover, Massachusetts) and Barker Bariatric (a Texas professional association with its principal office in Dallas, Texas) entered into a contract pursuant to which Centurion provided computer networking support services in exchange for $39,000 to be paid by Barker Bariatric in equal monthly installments for one year. Am. Compl. ¶¶ 1, 2, 7. In December 2016, in accordance with the contract, Barker Bariatric requested Centurion's emergency assistance in transporting large equipment from its office in Dallas, Texas to its office in Mesquite, Texas. Id. ¶¶ 13−14. Centurion fully performed under the contract, but Barker Bariatric failed to both compensate Centurion for these emergency services and meet all of its monthly payment obligations. Id. ¶¶ 9−12, 18−20.

On July 14, 2017, Centurion filed this lawsuit to recover damages arising out of Barker Bariatric's breach of the contract. [ECF No. 1]. On October 27, 2017, Defendants moved to dismiss the initial complaint [ECF No. 10], and Centurion responded by filing the Amended Complaint in which it seeks to pierce the corporate veil to hold Dr. Barker, the purported sole owner and principal of Barker Bariatric, liable for his company's acts or omissions. Am. Compl. ¶¶ 6, 27. On January 26, 2018, Barker Bariatric answered the Amended Complaint, while Dr. Barker moved to dismiss for lack of personal jurisdiction. [ECF Nos. 18, 19].

## II. DISCUSSION

Centurion bears the burden of establishing jurisdiction over Dr. Barker. Baskin-Robbins, 825 F.3d at 34. "Faced with a motion to dismiss for lack of personal jurisdiction, a district court 'may choose from among several methods for determining whether the plaintiff has met [its] burden.'" Adelson v. Hananel, 510 F.3d 43, 48 (1st Cir. 2007) (quoting Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 50–51 (1st Cir. 2002)). The prima facie standard applies where, as here, "a district court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing." United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001). The prima facie standard does not involve differential fact finding; rather, it requires "only that a plaintiff proffer evidence which, taken at face value, suffices to show all facts essential to personal jurisdiction." Baskin-Robbins, 825 F.3d at 34. The Court accepts plaintiff's properly documented evidentiary proffers as true "and construe[s] them in the light most congenial to the plaintiff's jurisdictional claim." Daynard, 290 F.3d at 51 (citations omitted). "If the plaintiff makes a *prima facie* showing of jurisdiction supported by specific facts alleged in the pleadings, affidavits, and exhibits, its burden is met." Ealing Corp. v. Harrods Ltd., 790 F.2d 978, 979 (1st Cir. 1986).

There are two types of personal jurisdiction: general and specific. Harlow v. Children's Hosp., 432 F.3d 50, 57 (1st Cir. 2005). General jurisdiction exists "when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant Street Corp., 960 F.2d 1080, 1088 (1st Cir. 1992). In contrast, specific jurisdiction exists when "the cause of action arises directly out

3

of, or relates to, the defendant's forum-based contacts." Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994) (quoting United Elec. Workers, 960 F.2d at 1088−89).

### A. General Jurisdiction

"For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.'" Daimler AG v. Bauman, 571 U.S. 117, 137 (2014) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924 (2011)). "In addition to domicile, a court may also assert general jurisdiction over an individual when the person offers explicit consent, . . . or is physically present in the forum state. Grice v. VIM Holdings Group, LLC, 280 F. Supp. 3d 258, 269−70 (D. Mass. 2017) (citing J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873, 880, (2011) and Burnham v. Superior Court of California, County of Marin, 495 U.S. 604, 619 (1990)). Here, Centurion does not contend, nor is there any evidence in the record to show, that this Court has general jurisdiction over Dr. Barker.

### B. Specific Jurisdiction

The exercise of specific jurisdiction "hinges on satisfaction of two requirements: first, that the forum [state] has a long-arm statute that purports to grant jurisdiction over the defendant; and second, that the exercise of jurisdiction pursuant to that statute comports with the strictures of the Constitution." Pritzker, 42 F.3d at 60. Because the First Circuit has generally treated "the limits of Massachusetts' long-arm statute as coextensive with those of the Due Process Clause," Copia Commc'ns, LLC v. AMResorts, L.P., 812 F.3d 1, 4 (1st Cir. 2016), the Court may "sidestep the statutory inquiry and proceed directly to the constitutional analysis." Evans Cabinet

4

Corp. v. Kitchen Int'l, Inc., 593 F.3d 135, 146 (1st Cir. 2010) (citation omitted); see Phillips v. Prairie Eye Ctr., 530 F.3d 22, 26 (1st Cir. 2008).[1]

To determine whether it may exercise specific jurisdiction, the Court conducts a three-part inquiry:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's court foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

Pritzker, 42 F.3d at 60−61 (quoting United Elec. Workers, 960 F.2d at 1089).

Here, Centurion seeks to impute Barker Bariatric's contacts with the forum state onto Dr. Barker by piercing the corporate veil between them. For the purposes of this motion, the Court accepts that Barker Bariatric "waive[d] its right to challenge personal jurisdiction by consenting to personal jurisdiction in a forum selection clause." Inso Corp. v. Dekotec Handelsges, mbH, 999 F. Supp. 165, 166 (D. Mass. 1998) (citing M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 11 (1972)). The contract between Centurion and Barker Bariatric adopts Massachusetts law as the governing law and specifies that "any dispute and cause of action arising out of this [contract] shall be filed in the state or federal courts in Essex County Massachusetts. The [parties] waive all questions of personal jurisdiction and venue of such courts, including without limitation, any claim or defense that such courts constitute an inconvenient forum." [ECF No. 12-1 at 8].

---

[1] Although the Massachusetts long-arm statute "might impose more restrictive limits on the exercise of personal jurisdiction than does the Constitution," Copia Commc'ns, LLC v. AMResorts, L.P., 812 F.3d 1, 4 (1st Cir. 2016), neither party has raised this issue here. The Court will therefore proceed with the constitutional analysis. See, e.g., Katz v. Spiniello Cos., 244 F. Supp. 3d 237, 244 (D. Mass. 2017); see also Bohnenberger v. MCBC Hydra Boats, LLC, No. 16-cv-11368-LTS, 2017 WL 3976566, at *4 n.8 (D. Mass. 2017) (collecting similar cases).

Assuming, *arguendo*, that the Court has jurisdiction over Barker Bariatric, the question is whether Barker Bariatric's in-state contacts may be imputed to Dr. Barker as the purported sole owner or principal. See Harrelson v. Seung Heun Lee, 798 F. Supp. 2d 310, 316 (D. Mass. 2011) ("[Plaintiff's] claim of personal jurisdiction, which is both general and specific, is based less on any direct act of [the individual defendant] in Massachusetts than it is on his role as the pervasively dominant and controlling principal of the [relevant corporate entity]."); see also Donatelli v. Nat'l Hockey League, 893 F.2d 459, 466 (1st Cir. 1990) ("[O]nce minimum contacts can be attributed derivatively to the parent, . . . all of the relevant secondary criteria (e.g., notice, foreseeability, reciprocity, purposeful availment, and the other Gestalt factors) corroborate the appropriateness of an exercise of jurisdiction."). "This is a difficult theory because it depends on a piercing of the corporate form, an entity of which Massachusetts law is especially protective. The corporate veil will be pierced in Massachusetts only to defeat fraud or to remedy injustice." Harrelson, 798 F. Supp. 2d at 316 (citing Hanson v. Bradley, 10 N.E.2d 259, 264 (Mass. 1937)).

Because the underlying claims here are based in state law, state law principles guide the analysis. See Katz v. Spiniello Cos., 244 F. Supp. 3d 237, 252 (D. Mass. 2017); In re Lernout & Hauspie Sec. Lit., 337 F. Supp. 2d 298, 321 (D. Mass. 2004). The veil piercing standard in Massachusetts is "demanding," as a corporation is presumed to be separate and distinct. Lothrop v. North Am. Air Charter, Inc., 95 F. Supp. 3d 90, 100 (D. Mass. 2015) (citing Scott v. NG U.S. 1, Inc., 881 N.E.2d 1125, 1131 (Mass. 2008)). Although the corporate veil "may be pierced only with reluctance and in extreme circumstances when compelled by reasons of equity," the Massachusetts Supreme Judicial Court has identified the following factors to be considered holistically when determining whether piercing the corporate veil is appropriate:

> (1) common ownership; (2) pervasive control; (3) confused intermingling of business assets; (4) thin capitalization; (5) nonobservance of corporate formalities;

6

(6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporation's funds by dominant shareholder; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; and (12) use of the corporation in promoting fraud.

Lothrop, 95 F. Supp. 3d at 100 (quoting Att'y. Gen. v. M.C.K., Inc., 736 N.E.2d 373, 380 n.19 (Mass. 2000)); see Malden Transp., Inc. v. Uber Techs., Inc., 286 F. Supp. 3d 264, 271−72 (D. Mass. 2017) (applying same factors to attempt to pierce veil between corporation and individual defendants).

Centurion alleges, in relevant part, that Barker Bariatric has not observed corporate formalities to the extent that it is not registered as a professional association with the Texas Secretary of State, and other similarly named entities are listed as either "expired" or "forfeited existence." Am. Compl. ¶¶ 25−26. Dr. Barker also allegedly set up a separate billing company for Barker Bariatric and hired his girlfriend as the head of that company, although she had no prior accounting experience. Id. ¶ 28. He apparently siphoned away funds from Barker Bariatric, either to "pay for exotic vacations to the Bahamas on a private jet," to "purchase a vacation home in the Bahamas," or to support other businesses in which Dr. Barker had an ownership stake or other interest. Id. ¶¶ 29−30. The Amended Complaint concludes with the following paragraph aimed at establishing jurisdiction over Dr. Barker:

> The allegations supporting piercing the corporate veil to make Dr. Barker personally liable for the damages suffered by Centurion include common ownership of the entities to which significant funds were transferred to and from; pervasive control over all of these entities; confused intermingling of business activity, assets, or management by, among other things, syphoning money from [Barker Bariatric] to Dr. Barker's other entities other than by an arm's length transaction; [Barker Bariatric] maintaining thin capitalization at the time it entered into the contract; nonobservance of corporate formalities; absence of corporate records; alleged insolvency of [Barker Bariatric] at the time of [Barker Bariatric's] breach of contract necessitating this litigation; siphoning away of corporate assets by the dominant shareholders, to wit, Dr. Barker; use of the corporation ([Barker

> Bariatric]) for non-corporate transactions by Dr. Barker; and use of the corporation in promoting fraud.

Id. ¶ 33.

In opposing the motion to dismiss, Centurion supplemented the allegations in the Amended Complaint with an affidavit of its managing member, Marc R. Schwartz, and an affidavit of the former CFO of Barker Bariatric, Tony Morgan. [ECF Nos. 22-1, 23-1]. Schwartz's affidavit states that (1) Dr. Barker's personal bookkeeper took over Mr. Morgan's position at Barker Bariatric in February 2017; (2) in December 2016, Dr. Barker was indicted for improper business practices; (3) prior to the indictment, Dr. Barker flew on private jets to a home in the Bahamas and "cash flowed lavishly;" and (4) Centurion performed some computer servicing at Dr. Barker's home which was billed to Barker Bariatric or Forest Park Medical, another entity in which Dr. Barker had an interest. [ECF No. 22-1]. The Morgan affidavit adds that at times between 2011 and 2017, Centurion provided technology assistance at Dr. Barker's home or his parents' home. [ECF No. 23-1].

Although Centurion attempted to check the box on each of the relevant factors under Massachusetts' veil piercing analysis, the evidence in these affidavits, and the credible allegations of the Amended Complaint, fall short of the high threshold for piercing the corporate veil. Centurion's theory is predicated on Dr. Barker's ownership of Barker Bariatric, failure to register with the Texas Secretary of State, and instances over the course of six years, much of which predates the execution of the relevant contract, when computer network services were provided by Centurion at Dr. Barker's home or his parents' home. The pleadings and affidavits, however, do not show that the work performed at his or his parents' home was for Dr. Barker's personal benefit and not for the benefit of Barker Bariatric. Even if those services were for his personal use, Centurion has not met the demanding standard required for disregarding corporate

8

separation. There is no evidence or non-conclusory allegation regarding his exercise of pervasive control of Barker Bariatric or the promotion of fraud. Centurion asserts that Barker Bariatric paid for Dr. Barker's vacations to the Bahamas, but Mr. Schwartz avers, at most, that "[w]hat entities paid for what [is] not clear," and that Dr. Barker "would fly on private jets to a home in the Bahamas and cash flowed lavishly," without attesting that those trips were paid for by Barker Bariatric. Centurion also provides no detail about the criminal indictment of Dr. Barker or how it relates, if at all, to any impropriety in his role as a principal and owner of Barker Bariatric. The Amended Complaint and supporting affidavits are likewise lacking in sufficient detail and evidence regarding Dr. Barker's relationships with other entities, *i.e.* Forest Park Medical, and the corporate transactions that Barker Bariatric purportedly entered into for the personal benefit of Dr. Barker.

In sum, the conclusory allegations of the Amended Complaint and the scant evidence provided in support thereof, even when taken at face value, fail to plausibly justify the extraordinary measure of piercing the corporate veil. Accordingly, Centurion has not established that personal jurisdiction over Dr. Barker lies in Massachusetts.

### III.    CONCLUSION

For the foregoing reasons, Dr. Barker's motion to dismiss [ECF No. 19] is <u>GRANTED</u> and the Amended Complaint is <u>DISMISSED</u> without prejudice. Although the Amended Complaint fails to establish personal jurisdiction over Dr. Barker, the Court will allow Centurion one last attempt to meet its jurisdictional burden. Centurion is granted leave to file a second amended complaint within 30 days of the date of this Order.

**SO ORDERED.**

April 26, 2018 <u>/s/ Allison D. Burroughs</u>
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE